**(CIN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA EX REL JOSEPH STINSON, *et al.* | ) ) ) ) | |
| *Plaintiffs,* | ) ) | No. 20 C 7381 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| OAK STREET HEALTH, INC. and OAK STREET HEALTH, LLC, | ) ) ) ) ) | |
| *Defendants*. | ) ) ) ) | |

## OPINION AND ORDER

Joseph M. Callow Jr. and Gregory M. Utter of the law firm Callow + Utter Law Group ("Callow and Utter"), counsel for Plaintiff Joseph Stinson, move to quash a *quantum meruit* lien claim allegedly asserted by Stinson's former counsel, Keating Muething & Klekamp, PLL ("KMK"). For the reasons set forth below, Callow and Utter's Motion to Quash [46] is denied.

## BACKGROUND

In December 2020, Stinson filed a False Claims Act suit against Defendants Oak Street Health, Inc. and Oak Street Health, LLC ("Defendants") on behalf of the United States of America and 15 individual states. (Dkt. 1). Stinson was initially represented by KMK, where Callow and Utter were employed at the time. (Dkt. 46 at 2); (Dkt. 49 at 2). On April 25, 2023, Callow and Utter resigned from KMK and started their own law firm. (Dkt. 46 at 2); (Dkt. 49 at 2). They solicited Stinson, who elected to proceed with Callow and Utter as his counsel in this case. (Dkt. 46 at 2); (Dkt. 49 at 2). KMK withdrew its representation. (Dkt. 46 at 2); (Dkt. 49 at 2).

1

In September 2024, Judge Edmond E. Chang, presiding over this case at that time, dismissed the suit pursuant to a settlement agreement reached between Stinson, the Defendants, the United States, and the State of Illinois. (Dkt. 42). KMK was not a party to the Settlement Agreement. (Dkt. 41-1); (Dkt. 49 at 6). Pursuant to the Settlement Agreement, the Northern District of Illinois retains exclusive jurisdiction for any dispute relating to the Agreement. (Dkt. 41-1 at 11); (Dkt. 46 at 2). Following settlement, KMK asserted a *quantum meruit* lien against Callow and Utter for the work it performed in this case prior to its withdrawal. (Dkt. 46 at 2); (Dkt. 53 at 1-2). KMK sought $73.804.05 for 147.65 hours of work performed. (Dkt. 53 at 2). In December 2024, Callow and Utter paid the lien, but maintained that it would not pay any additional liens that KMK may assert for any contingency fees Callow and Utter obtained from Stinson in the settlement. (*Id.* at 2-3). KMK has not filed any other liens against Callow and Utter. (Dkt. 53 at 4-6).

The case was terminated on January 23, 2025. (Dkt. 46 at 1); (Dkt. 49 at 6). On January 29, 2025, KMK initiated arbitration proceedings against Callow and Utter pursuant to a binding arbitration provision in KMK's partnership agreement, which Callow and Utter had signed as former partners at KMK. (Dkt. 49 at 2). The parties are disputing, among other things, how much money Callow and Utter owe KMK for its former representation of Stinson. (Dkt. 49 at 2). Callow and Utter maintain that KMK is seeking a portion of the contingency fees they recovered in the settlement, but KMK does not specify the details of the issues being arbitrated. (Dkt. 53 at 3-4). According to KMK, the arbitrator rejected two attempts by Callow and Utter to challenge the American Arbitration Association's ("AAA") jurisdiction. (*Id.*). As of November 2025, the parties were still in arbitration proceedings. (Dkt. 49 at 3). Aside from challenging the AAA's jurisdiction,

2

Callow and Utter have proceeded with arbitration and have not sought judicial intervention to enjoin it. (*Id.*); (Dkt. 53 at 6 n.1).

## DISCUSSION

Callow and Utter now move to quash a *quantum meruit* lien purportedly filed against them by KMK. (Dkt. 46). They acknowledge that they have already paid one lien from KMK and that KMK has not filed any other liens against them. (*Id.* at 4-6). Nonetheless, they argue that the Court should exercise supplemental jurisdiction to re-open this case to decide the merits of liens that may be filed against them in the future. (*Id.* at 6). There is no case or controversy for this Court to decide, so it has no jurisdiction.

In addition to the authority to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, federal courts retain ancillary enforcement jurisdiction to "address matters related, but tangential to, cases within their jurisdiction." *Nichols v. Longo*, 22 F.4th 695, 698 (7th Cir. 2022) (citing *Peacock v. Thomas*, 516 U.S. 349, 354 n.5 (1996)). This ancillary jurisdiction extends to the adjudication of disputes over attorney's fees after the termination of a case. *Longo*, 22 F.4th at 698; *see also Goyal v. Gas Tech. Inst.*, 718 F.3d 713, 717 (7th Cir. 2013) ("District courts may exercise supplemental jurisdiction over disputes between attorneys and clients concerning costs and fees for representation in matters pending before the district court."); *O'Donnell v. Saul*, 983 F.3d 950, 956 (7th Cir. 2020) ("[G]enerally speaking, courts *may* exercise ancillary jurisdiction over fee disputes.") (emphasis in original). Courts have used this jurisdiction to resolve motions to quash attorney fee liens brought during and after litigation. *See e.g., Brunson v. Carmax Bus. Servs.*, 2024 WL 4170211, at *8 (N.D. Ill. Sept. 12, 2024) (court had supplemental jurisdiction to adjudicate attorney's lien for settlement proceeds filed during settlement negotiations); *Collazo v. Forefront Educ., Inc.*, 2011 WL 5191014, at *2 (N.D. Ill. Oct. 27, 2011) (court had supplemental jurisdiction to adjudicate motion to quash attorney's lien).

3

The issue here is that there is no lien for this Court to adjudicate. "Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. . . which is to say to actual legal disputes." *Klinger v. Conan Doyle Est., Ltd.*, 755 F.3d 496, 498 (7th Cir. 2014); *see also* U.S. Const. Art III, § 2, cl. 1. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quotation omitted). Ripeness is one aspect of the case-or-controversy requirement. *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). A dispute is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Texas v. United States*, 523 U.S. 296, 300, (1998) (citation omitted); *see also Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658, 664 (7th Cir. 2021) ("A case is not ripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts.") (internal citations omitted). If a dispute is not ripe, the Court does not have jurisdiction. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund by Bunte v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016) (citing *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991)).

Callow and Utter concede that there are no outstanding liens against them from KMK. (Dkt. 53 at 4-6). Instead, they ask the Court to re-open the case and assert jurisdiction over a "purported" lien so the Court may "decide the merits of the lien in the future." (*Id.* at 6). Callow and Utter's assertion that KMK *might* file another lien against them is exactly the type of hypothetical and speculative dispute that fails to satisfy the case-or-controversy requirement. *See, e.g., Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 999 (7th Cir. 2011) (dispute over scope of arbitration clause was not ripe for review where neither party expressed an interest in arbitrating the claims); *Hartford Accident & Indem. Co. v. Zhen Feng Lin*,

4

2021 WL 538031, at \*8 (N.D. Ill. Feb. 15, 2021), *aff'd sub nom. Hartford Accident & Indem. Co. v. Lin*, 97 F.4th 500 (7th Cir. 2024) (dispute over the limits of an insurance policy was not ripe for determination where parties were still arbitrating the amount of recoverable damages).

The parties are currently arbitrating their fee disputes pursuant to a binding arbitration provision in a partnership agreement they all signed. Callow and Utter may be unhappy with how arbitration is proceeding, but that does not grant them entry to this Court. Determining whether KMK can assert a valid lien against Callow and Utter for any of the contingency fees they obtained from this case would be "nothing more than an advisory opinion to be used as guidance on the chance that" KMK decides to bring a lien. *Kawaski Heavy Industries, Ltd.*, 660 F.3d at 988; *see also Cellco P'ship v. City of Milwaukee*, 140 F.4th 854, 861 (7th Cir. 2025) ("[F]ederal courts do not issue advisory opinions.") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). If either party is dissatisfied with whatever arbitral award results from the proceedings, they may petition to vacate or modify it in the appropriate federal court. *See Legaspy v. Fin. Indus. Regul. Auth., Inc.*, 2020 WL 4696818, at \*3 (N.D. Ill. Aug. 13, 2020) (citing 9 U.S.C. § 10(a)).

## <u>CONCLUSION</u>

For the reasons stated above, Callow and Utter's Motion to Quash *Quantum Meruit* Lien Claim [46] is denied.

Virginia M. Kendall
United States District Judge

Date: April 2, 2026